THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JAMES CERCE, DEFENDANT-APPELLANT.

Argued December 6, 1965—Decided February 21, 1966.

*Mr. Frederick Klaessig* argued the cause for appellant.

*Mr. Archibald Kreiger,* Assistant Prosecutor, argued the cause for respondent (*Mr. John G. Thevos,* Passaic County Prosecutor, attorney).

The opinion of the court was delivered by

HALL, J. This is a post-conviction relief proceeding brought under *R. R.* 3:10A. The defendant was convicted by jury verdict in December 1955 of second degree murder for the killing of his wife and was sentenced to 25 to 30 years' imprisonment. The conviction was affirmed by this court on direct appeal. 22 *N. J.* 236 (1956). No further review was sought or collateral attack made until the present petition was filed on May 28, 1965, one month after the decision of the United States Supreme Court in *Griffin v. State of California,* 380 *U. S.* 609, 85 *S. Ct.* 1229, 14 *L. Ed. 2d* 106.

At the trial and on appeal the defendant was represented by privately retained counsel, since deceased, of long experience in criminal matters, as he is in the present proceeding. The jury was instructed that murder in the first degree, murder in the second degree and manslaughter were legally

possible verdicts under the proofs. No confession or inculpatory admissions had been made and the State's case was circumstantial, but strong. He did not take the stand and comment on this failure to testify was made by the prosecutor in summation and in the judge's charge as was permissible under the law of this State at the time. On the appeal neither the right to comment nor the form of the instruction thereon was challenged. The prosecutor's comments were assailed, not in this context, but, along with other portions of the summation, as going so far beyond the bounds as to deprive the defendant of a fair trial. This court found specifically that they did not and indeed held that there was no indication in any aspect of the prosecution "of an injustice on the basis of fundamental fairness requiring correction." 22 *N. J.,* at *p.* 247.

The petition for post-conviction relief asserted numerous grounds, including especially retroactive application of *Griffin,* which held that comment by the prosecution or instructions by the court on an accused's failure to testify is forbidden by the self-incrimination protection of the Fifth Amendment, applicable to the states through the Fourteenth Amendment. The State moved to dismiss the petition on its face, contending in effect that, in the light of the trial record and the issues raised, or· which could have been raised, on the direct appeal, the allegations were legally and factually insufficient to state any recognizable claim for post-conviction relief within the criteria set forth in *R. R.* 3 :10A–2, 3 :10A–3; 3 :10A–4 and 3 :10A–5. See *State v. (Edgar) Smith,* 43 *N. J.* 67, 74 (1964), *cert.* denied, 379 *U. S.* 1005, 85 *S. Ct.* 731, 13 *L. Ed.* 2d 706, rehearing denied 380 *U. S.* 938, 85 *S. Ct.* 945, 13 *L. Ed.* 2d 826 (1965). After full argument, the trial judge granted the motion, with specific findings on all the claims asserted. The defendant's appeal from the resultant judgment, *R. R.* 3 :10A–12, comes directly to us since the indictment was for murder. *R. R.* 1 :2–1(c).

We are satisfied that the trial judge was correct in concluding that none of the grounds alleged in the petition was

the appropriate subject of post-conviction relief. Only two are worthy of specific mention.

The trial judge held that the doctrine of *Griffin v. State of California* should not be given retroactive effect. As of the time of the argument before him, we had held that that decision rendered unconstitutional our prior law permitting comment on a defendant's failure to testify, but had said in the same case that we "express no opinion as to the applicability of *Griffin* to a collateral attack." *State v. Lanzo,* 44 *N. J.* 560, 564 (1965). When the present appeal was argued, the defendant again contending that retroactive application should be accorded, a case was pending in the United States Supreme Court in which the very question was involved. The case has since been decided. *Tehan v. United States ex rel. Sholt,* 86 *S. Ct.* 459 (January 19, 1966). The court was there concerned with an attack by federal *habeas corpus* on an Ohio state court conviction, in the trial of which comment on the defendant's failure to testify had been permitted pursuant to that state's law. All avenues of direct review had been foreclosed almost two years before *Griffin.* The decision held that the rule of *Griffin* need not be applied where the state judgment of conviction was rendered, the availability of direct appeal in the state court system had been exhausted, and, if such appeal had been pursued, the time for petition for *certiorari* to the United States Supreme Court had elapsed or such a petition been finally denied, before April 28, 1965, the date of the *Griffin* opinion. See 86 *S. Ct.,* at *p.* 461, *n.* 3. The conclusion is precisely pertinent to the question in the courts of this State and we will not give retrospective application to *Griffin* where, as here, the chronology fits the specified pattern.

The other ground for relief deserving comment is that the defendant was not afforded the opportunity to speak in his own behalf at the time of sentencing, in violation of that portion of then *R. R.* 3:7–10(c) which read: "Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present

any information in mitigation of punishment." [1] The contention is not that the alleged error requires reversal of the conviction and a complete new trial, but only that a resentence now is necessary.

The factual setting is this. On sentence day defendant's counsel made a fervent plea in his presence for a sentence considerably less than the 30-year maximum authorized for second degree murder (*N. J. S. A.* 2A:113-4), urging many factors in mitigation encompassing not only the circumstances of the killing, but also the fact that while he was an admitted gambler, his prior criminal record did not include any offenses involving violence. In the course of his argument he said: "I am here as the advocate of Jimmy Cerce." When he concluded, the judge pronounced sentence without inquiring from the defendant personally whether he had anything to say. It is not a case where the defendant asked to speak in his own behalf and was refused nor where no one was given the opportunity to speak for him nor where any other aggravating circumstances were present. Immediately after the imposition of sentence, the defendant volunteered: "Thank you very much, your Honor. I'm innocent. I want everyone to know. I didn't kill my wife." The question was not raised on his appeal from the conviction or in any other manner before the trial court or elsewhere prior to the present proceeding commenced more than nine years after the sentence.

In the post-conviction relief petition, nothing more was alleged than: "Effectively, the petitioner was not extended the right to speak in his own behalf on Sentencing day, in conformity to *R. R.* 3:7-10(d), formerly Rule 3:7-10(c)." He has not suggested what he could or would have said beyond

---

[1] The provision was amended, effective January 2, 1964, to its present form, now found in *R. R.* 3:7-10(d) : "Before imposing sentence the court shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment. The defendant may answer personally or by counsel."

the presentation of his counsel. On the motion to dismiss this petition, the judge found that even though defendant was not asked if he wanted to speak for himself, his counsel did speak for him extensively and there was no prejudice. In his argument here, the defendant urges that prejudice is inherent and need not be specifically demonstrated. The State counters by contending that a violation of the rule cannot be raised on application for post-conviction relief. The question has not previously been passed upon by this court and the decisions of the Appellate Division are not completely informative.

 In considering the matter, our pertinent rules and their history should be in mind, as well as comparable federal provisions and the interpretation of the latter by the United States Supreme Court. The previously quoted portion of *R. R.* 3:7–10(c) as it stood in 1955 was certainly copied verbatim from *Fed. R. Crim. P.* 32(a). It may be observed that the 1964 amendment, n. 1, *supra,* did no more than state in unquestionable language the intent of the previous expression. The United States Supreme Court has clearly held that the intended purpose of federal rule 32(a) is not satisfied by merely affording defendant's counsel the opportunity to speak, *Green v. United States,* 365 *U. S.* 301, 304, 81 *S. Ct.* 653, 5 *L. Ed. 2d* 670, 673 (1961), rehearing denied 365 *U. S.* 890, 81 *S. Ct.* 1024, 6 *L. Ed. 2d* 201 (1961); *Hill v. United States,* 368 *U. S.* 424, 426, 82 *S. Ct.* 468, 7 *L. Ed. 2d* 417, 420 (1962), rehearing denied 369 *U. S.* 808, 82 *S. Ct.* 640, 7 *L. Ed. 2d* 556 (1962), and we think our rule should be similarly construed.

Prior to January 2, 1964, our rules contained two procedural provisions relating to relief from criminal sentences. *R. R.* 3:7–13(a) read:

"The court may correct an *illegal* sentence at any time. The court may reduce or change a sentence within 60 days from the date of the judgment of conviction, or, if an appeal is taken within the 60 days, not later than 20 days of the issuance of the mandate by the appellate court." (Emphasis added)

*R. R.* 3 :7–15(a) read:

"Where a prisoner is in custody under sentence of a criminal court and claims that the sentence imposed was *illegal*, he shall apply for correction of the sentence to the court which imposed the same. An appeal from the determination of such application may be taken in the same manner as from other final judgments." (Emphasis added)

The rules contained no definition of an "illegal" sentence.

*Fed. R. Crim. P.* 35 contains the same first sentence as did *R. R.* 3 :7–13(a). 28 *U. S. C. A.* § 2255, enacted in 1948, specified the procedure for federal prisoners:

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion for such relief may be made at any time.
\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*"

*Hill v. United States, supra,* explained that this legislation "was intended simply to provide in the sentencing court a remedy exactly commensurate with that which had previously been available by *habeas corpus* in the court of the district where the prisoner was confined." 368 *U. S.,* at *p.* 427, 82 *S. Ct.,* at *p.* 471, 7 *L. Ed. 2d,* at *p.* 420.

When *R. R.* 3 :10A, comprehensively specifying both the grounds and procedure for post-conviction relief, was adopted effective January 2, 1964, the treatment of an illegal sentence was transferred to and incorporated in that rule. The first sentence of *R. R.* 3 :7–13(a) as well as the whole of *R. R.* 3 :7–15(a) were deleted. Thus *R. R.* 3 :10A–2 provided:

"A petition for post-conviction relief shall be cognizable if based upon any of the following grounds:
\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*
(c) Imposition of sentence in excess of or otherwise not in accordance with the sentence authorized by law.
\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*"

And *R. R.* 3:10A–13, specifying time limitations for the filing of post-conviction relief petitions, contained an exception "that a petition to correct an illegal sentence may be filed at any time."

In 1962 the United States Supreme Court in *Hill* answered the question, interpreting *Fed. R. Crim. P.* 32(a), "whether a district court's failure explicitly to afford a defendant an opportunity to make a statement at the time of sentencing furnishes, without more, grounds for a successful collateral attack upon the judgment and sentence" by holding "that the failure to follow the formal requirements of Rule 32(a) is not of itself an error that can be raised by collateral attack ***" 368 *U. S.*, at *p.* 426, 82 *S. Ct.*, at *p.* 470, 7 *L. Ed.* 2d, at *p.* 420. The reason for the conclusion was expressed in this language of the majority opinion:

"The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'

\* \* \* \* \* \*

The sentence in this case was not illegal. The punishment meted out was not in excess of that prescribed by the relevant statutes, multiple terms were not imposed for the same offense, nor were the terms of the sentence itself legally or constitutionally invalid in any other respect." (368 *U. S.*, at *pp.* 428, 430, 82 *S. Ct.*, at *pp.* 471, 472, 7 *L. Ed. 2d*, at *pp.* 421, 422)

Accord: *Machibroda v. United States,* 368 *U. S.* 487, 82 *S. Ct.* 510, 7 *L. Ed. 2d* 473 (1962).

 *Hill* is to be read with the court's earlier summary disposition and remand for resentence in *Van Hook v. United States,* 365 *U. S.* 609, 81 *S. Ct.* 823, 5 *L. Ed. 2d* 821 (1961). There the same rule violation occurred, but it was raised on direct appeal from the conviction rather than by collateral attack. The inference is that this kind of error is mere trial

error, raisable only by appeal, and that, when so presented, the fact of the rule violation in itself requires a resentence without the necessity of any showing of prejudice.

The case before us is like *Hill*—a failure only to comply at sentence with the formal requirements of then *R. R.* 3:7–10(c). While the question is not a constitutional one and the United States Supreme Court in *Hill* was construing only federal rules and statutes, not binding on us in interpreting our own rules, we strongly feel, however, that the federal result is sound and desirable and that we should come to the same conclusion. We conceive that our rules, both before and after the adoption of *R. R.* 3:10A, being substantially similar to the federal provisions, were and are intended to encompass the same subject matter. We hold, therefore, that the sentence here was not an "illegal" one within the proper meaning of our rules and that the violation urged is not a valid ground for post-conviction relief, but raisable only on direct appeal from the conviction.[2] This the defendant did not do and he is now barred. *R. R.* 3:10A–4. We leave for an appropriate case, as did the United States Supreme Court in *Hill*, 368 *U. S.*, at *p.* 429, 82 *S. Ct.* 468, 7 *L. Ed. 2d*, at *p.* 422, whether collateral attack would be available if a violation of the rule occurred in the context of aggravating circumstances and, if so, whether actual prejudice therefrom would then also have to be demonstrated. *Cf. State v. Jenkins*, 32 *N. J.* 109 (1960).

A word about the decisions of the Appellate Division in the area. *State v. Bray*, 67 *N. J. Super.* 340 (*App. Div.* 1961); *State v. Harris*, 70 *N. J. Super*, 9 (*App. Div.* 1961); *State v. James*, 84 *N. J. Super.* 109 (*App. Div.* 1964); *State v. Laird*, 85 *N. J. Super.* 170 (*App. Div.* 1964). All were concerned with simple violations of the rule as in the case at bar.

---

[2] We do not mean to intimate that a defendant must take an appeal from his conviction in order to raise a violation of the rule in question. He may do so as well by timely motion in the trial court in the first instance, certainly within the 60 day period after judgment allowed by *R. R.* 3:7–13(a) for reduction or change in sentence.

In *Harris,* the question was raised on direct appeal from a conviction. The court automatically remanded for resentence, without any mention of the necessity for a showing of prejudice. The disposition accords with that in *Van Hook* (365 *U. S.* 609, 81 *S. Ct.* 823, 5 *L. Ed.* 2d 821) and we think was correct. The other three cases were collateral attacks by the then remedy of *habeas corpus.* In *Bray,* the court denied relief because the defendant had not suggested what he could have told the judge at sentence which might have resulted in mitigation of his punishment, a matter no longer of moment, certainly in an unaggravated case, because of our holding that post-conviction relief does not lie. In *James,* the court remanded for resentence on the authority of the automatic rule of *Harris,* which, as we have noted, came up on direct appeal. In doing so, it overruled the prejudice criterion of *Bray.* Under our holding today that the rule violation may not be raised by collateral attack, *James* was erroneous in granting relief at all. *Laird* is in basic accord with today's conclusion. While a remand for resentencing was ordered in a *habeas corpus* proceeding, the court found that the prisoner, acting *pro se,* was cognizant of his right to appeal from the sentence, but mistook the form of his remedy. He did file a prompt collateral attack in the trial court, which was dismissed. Under the circumstances, the appellate tribunal was justified in treating the case before it "as the equivalent of a timely appeal from a trial court's refusal to correct a sentence." 85 *N. J. Super.,* at *p.* 179.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR and HALL—5.

*For reversal*—None.